**Corrected**

# In the United States Court of Federal Claims

No. 21-2275C

(Filed: July 27, 2022)

|  |  |
|---|---|
| SEVENTH DIMENSION, LLC, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

*Craig A. Holman*, Arnold & Porter Kaye Scholer LLP, Washington, D.C., for Plaintiff.  Of counsel were *Stuart W. Turner* and *Trevor G. Schmitt*.

*Rebecca S. Kruser*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.  With her on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Deborah A. Bynum*, Assistant Director.

## OPINION AND ORDER

**SOLOMSON**, **Judge.**

     This case puts to the test the old adage "third time's a charm."[1]  Defendant, the United States — acting by and through the U.S. Department of the Army, Special Operations Command ("Army" or "USASOC") — has now twice attempted to cancel the procurement at issue.  The first time was part of the Army's corrective action in response to a bid protest that Plaintiff, Seventh Dimension, LLC, filed before the U.S. Government Accountability Office (the "GAO"), challenging a contract award to the only other competitor remaining in the procurement.  To address Seventh Dimension's protest, the Army terminated its contract award to the competitor, leaving only Seventh Dimension's

---

[1] *See Brodie v. Burwell*, 2016 WL 3248197, at *1 (D.D.C. June 13, 2016) ("Some say the expression 'third time lucky' – and its American variant, 'third time's the charm' – dates back to Shakespeare's *The Merry Wives of Windsor*, published circa 1602: 'Pr'ythee, no more prattling: go. I'll hold: this is the third time; I hope good luck lies in odd numbers . . . .'").

proposal, and then decided to cancel the procurement entirely.  Seventh Dimension challenged that first cancellation decision in an earlier case before this Court.  The government once again took corrective action.  The Army rescinded its cancellation, reinstated the procurement, and committed to reconsider whether the Army's needs could be met with the current solicitation — either by making a contract award or by amending the solicitation and proceeding accordingly.  The Court dismissed that prior matter as moot given the parties' agreement regarding the scope and effect of the corrective action.  The Army, however, cancelled the procurement for a second time.  Naturally, Seventh Dimension returned to this Court for relief.

This time, following the parties' briefing of cross-motions for judgment on the administrative record, the Court sided with Seventh Dimension, holding that the Army's cancellation decision was arbitrary, capricious, and otherwise contrary to law.  *See Seventh Dimension, LLC v. United States*, 160 Fed. Cl. 1 (2022).

Pursuant to Rules 54(b) and 59(a)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), the Army now moves for reconsideration of this Court's decision, both as to this Court's findings on the merits and the resulting injunctive relief.

While the Court reaffirms the merits of its prior decision, the Court grants, in part, the government's motion for reconsideration, and modifies the previously issued injunction and remand to address some of the government's concerns.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[2]

On December 9, 2021, Seventh Dimension filed an action pursuant to 28 U.S.C. § 1491(b), challenging the Army's decision to cancel Solicitation No. H92239-19-R-0002 (the "Solicitation").  ECF No. 1.  Seventh Dimension asserted that the Army's cancellation decision was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, including provisions of the Federal Acquisition Regulation (the "FAR").  *See id.*  On January 21, 2022, the parties filed cross-motions for judgment on the administrative record ("MJAR") pursuant to RCFC 52.1.  *See* ECF No. 20 ("Def. MJAR"); ECF No. 21-1 ("Pl. MJAR").  On February 9, 2022, the parties filed response briefs.  *See* ECF No. 22 ("Def. Resp."); ECF No. 23 ("Pl. Resp.").  On March 1, 2022, the Court held oral argument.  *See* ECF No. 28 ("Tr.").

On May 4, 2022, this Court granted Seventh Dimension's MJAR and denied the government's cross-motion, finding that the Army's decision to cancel and resolicit the

---

[2] The Court incorporates by reference the detailed factual and procedural background set forth in its opinion and order.  *See* ECF No 34; *Seventh Dimension*, 160 Fed. Cl. at 8–13.  Citations to the administrative record (ECF No. 17, as supplemented by ECF Nos. 18, 19) are denoted as "AR" followed by the page number.

procurement was improper.  *Seventh Dimension*, 160 Fed. Cl. at 36.  The Court vacated the Army's cancellation decision and enjoined the Army "from proceeding with any and all reprocurement efforts for the work sought under the Solicitation until further notice."  *Id.* Furthermore, the Court remanded the matter to Army for further consideration, ordered the Army to reinstate the Solicitation, and directed the Army to either (1) "[a]ward a contract to Seventh Dimension pursuant to the reinstated Solicitation (consistent with FAR 19.1405(c))," or (2) "[i]ssue a new cancellation decision in compliance with the applicable statutes and regulations."  *Id.*  The Court instructed the Army that if it elects to issue a new cancellation decision, that new decision "based upon FAR 15.206(e) must explain why the reinstated Solicitation — or an [indefinite-delivery, indefinite-quantity ("IDIQ")] contract awarded pursuant thereto — would be insufficient to meet the Army's current needs (and/or cannot be modified, post-award, to accommodate those needs)." *Id.* at 37.

On May 31, 2022, the government moved for reconsideration of this Court's opinion and order.  ECF No. 35 ("Def. Mot. for Recons.").  In its motion, the government argues that (1) the Court erroneously concluded that Seventh Dimension is the only offeror remaining in the competition, and (2) the Court incorrectly interpreted and applied FAR 15.206 and failed to afford the Army the proper deference in its cancellation decision.  *See generally id.*

On June 15, 2022, per the direction of the Court, *see* ECF No. 36, Seventh Dimension filed a response to the government's motion for reconsideration, ECF No. 38 ("Pl. Resp. to Mot.").  On June 21, 2022, the Court held oral argument on the government's motion for reconsideration.  *See* ECF No. 41 ("Recons. Tr.").

Following oral argument, the Court issued an order directing counsel of record for the parties "to meet-and-confer regarding the likely corrective action the government may implement — and the implications for further litigation (*e.g.*, a challenge to such corrective action) — should the Court modify the injunction per the government's request." ECF No. 39 at 1.  The Court further ordered Plaintiff to file a status report "indicat[ing] whether or not it agrees that the Court should grant, in part, the government's motion for reconsideration by modifying the opinion and order, at least in terms of the scope of injunctive relief."  *Id.*  On June 27, 2022, Plaintiff filed the required status report.  ECF No. 42.  Therein, Plaintiff summarized its view of the discussions with the government and the parties' respective positions on the relief issue.  *Id.* at 1–2.  Shortly after Plaintiff filed its status report, the government filed a motion for leave to respond to Plaintiff's filing, asserting that "Plaintiff's status report does not accurately or completely reflect the substance of the discussions between the parties or the legal issues in this matter." ECF No. 43 at 1.  The Court granted the government's motion, *see* ECF No. 44, and on June 29, 2022, the government filed its response to Plaintiff's status report. ECF No. 45.

## II.     STANDARD OF REVIEW

This Court may grant "a motion for reconsideration on all or some of the issues" in an action "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court" or "upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States."  RCFC 59(a)(1)(B)–(C).  Indeed, a trial court "ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case."  *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016) (citing *Marconi Wireless T. Co. of Am. v. United States*, 320 U.S. 1, 47–48 (1943)); *see also* RCFC 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

"The burden on the moving party is high and a motion for reconsideration [pursuant to RCFC 59(a)(1)] is not intended merely to give an unhappy litigant an additional opportunity to persuade the court to accept its arguments."  *Multiservice Joint Venture, LLC v. United States*, 374 F. App'x 963, 967 (Fed. Cir. 2010) (per curiam) (citing *Citizens Fed. Bank, FSB v. United States*, 53 Fed. Cl. 793, 794 (2002)); *see also Froudi v. United States*, 22 Cl. Ct. 290, 300 (1991) ("[A] motion for reconsideration is not a vehicle for giving an unhappy [party] an additional chance to sway the judge, nor is it intended to allow a party to make arguments already presented to, and rejected by, the court." (citing *Weaver-Bailey Contractors, Inc. v. United States*, 20 Cl. Ct. 158, 158 (1990))); *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) ("It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'").

This Court generally "permits reconsideration for one of three reasons: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice."  *Parsons ex rel. Linmar Prop. Mgmt. Tr. v. United States*, 174 F. App'x 561, 563 (Fed. Cir. 2006) (citing *Henderson Cnty. Drainage Dist. No. 3 v. United States*, 55 Fed. Cl. 334, 337 (2003)).  This Court has defined "manifest" in this context as "clearly apparent or obvious."  *Ammex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002) (citing *Principal Mut. Life Ins. Co. v. United States*, 29 Fed. Cl. 157, 164 (1993)), *aff'd*, 384 F.3d 1368 (Fed. Cir. 2004).  Thus, where a party seeks reconsideration on the ground of "manifest injustice," the party must demonstrate that the "injustice . . . is apparent to the point of being almost indisputable."  *Pac. Gas & Elec. Co. v. United States*, 74 Fed. Cl. 779, 785 (2006), *aff'd in part and rev'd in part*, 536 F.3d 1282 (Fed. Cir. 2008).  Ultimately, "[t]he decision whether to grant reconsideration lies largely within the discretion of the [trial] court."  *Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

In any event, a party may not raise novel arguments on a motion for reconsideration, as such arguments are untimely. *Bluebonnet Sav. Bank, F.S.B. v. United States*, 466 F.3d 1349, 1361 (Fed. Cir. 2006) ("[A]n argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived and not preserved for appeal."); *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (finding that the plaintiff-appellee "did not meet the rigorous standards of RCFC 59(a)" because "raising . . . [an] argument for the first time on a Rule 59(a) motion [is] improper" where the issue is "inherently knowable" to the party and should have been raised in its merits briefs); *Gelco Builders & Burjay Constr. Corp. v. United States*, 369 F.2d 992, 1000 n.7 (Ct. Cl. 1966) ("Litigants should not, on a motion for reconsideration, be permitted to attempt an extensive re-trial based on evidence which was manifestly available at time of the hearing."), *quoted in Faust v. United States*, 79 F.3d 1167 (Fed. Cir. 1996) (per curiam).

## III.    DISCUSSION

The government moves for reconsideration on several grounds that may be broadly categorized as related to the relief the Court ordered in favor of Seventh Dimension, *see* Def. Mot. for Recons. at 3–12, or this Court's ruling on the merits of Seventh Dimension's complaint, *see id.* at 14–19. The Court addresses those arguments in reverse order.

### A.  The Court Properly Applied the Administrative Procedure Act's Standard of Review to Conclude that the Army Improperly Cancelled the Solicitation

With respect to the merits issues, the government's motion for reconsideration attacks, for the most part, a caricature of this Court's prior decision as one in which this Court improperly wrested control of the contracting process from an executive agency. This Court, however, has done no such thing. Rather, this Court continues to recognize, *see Seventh Dimension*, 160 Fed. Cl. at 15, that its role is limited to ensuring that the government complies with procurement law pursuant to the applicable standard of review, *see* 28 U.S.C. § 1491(b)(4). This Court thus once again rejects the government's arguments, all of which were addressed in one form or another in the earlier decision. Nevertheless, this Court writes at greater length to summarize and further explain its prior decision. The Court views this opinion and order — at least with respect to the merits of Seventh Dimension's complaint — as entirely consistent with every aspect of its earlier decision; to the extent there is any inconsistency, however, the prior decision is modified accordingly.

### 1.  Summary of the Court's Initial Decision

This Court's prior decision in favor of Seventh Dimension on the merits is built on a straightforward set of premises and conclusions, summarized as follows:

(1)     Sections 3301(b) and 3303(c) of Title 10 of the United States Code "must be read together to require an award unless the 'head of the agency' properly 'determines' that the 'public interest' favors rejecting all proposals." *Seventh Dimension*, 160 Fed. Cl. at 17 (quoting 10 U.S.C. § 3301(b)).[3]  In other words, those two statutory provisions, "read together, set up two mutually exclusive alternatives: (1) award a contract pursuant to the operative solicitation; or (2) reject all proposals (and cancel the solicitation)." *Id.*

(2)     In this case, the government did not cancel the Solicitation pursuant to 10 U.S.C. §§ 3301(b) and 3303(c).  Instead, the government cancelled the procurement based "*solely* upon the [contracting officer]'s determination pursuant to FAR 15.206," which primarily governs solicitation amendments.  *Id.* at 17.

(3)     FAR 15.206(e) requires cancellation of a solicitation where "[1] in the judgment of the contracting officer, [2] based on market research or otherwise, [3] an amendment proposed for issuance after offers have been received [4] is so substantial as to exceed what prospective offerors reasonably could have anticipated, [5] so that additional sources likely would have submitted offers had the substance of the amendment been known to them." *Id.* at 18 (emphasis omitted) (quoting FAR 15.206(e)).

(4)     The Executive Branch, however, cannot promulgate or otherwise use a regulatory provision, such as FAR 15.206(e), to make an end-run around clear congressional commands (*i.e.*, 10 U.S.C. §§ 3301(b), 3303(c)).  *See Caldera v. J.S. Alberici Const. Co.*, 153 F.3d 1381, 1383 n.2 (Fed. Cir. 1998) ("Statutes trump conflicting regulations.").[4]

---

[3] "Although discretionary authority granted by statute may not be delegated, such authority authorized by regulation, as opposed to by statute, may be delegated."  *John C. Grimberg Co. v. United States*, 869 F.2d 1475, 1483 (Fed. Cir. 1989) (Bennett, J., dissenting).

[4] *See also Texas v. EPA*, 726 F.3d 180, 195 (D.C. Cir. 2013) ("'[A] valid statute always prevails over a conflicting regulation,' and a regulation can never 'trump the plain meaning of a statute.'" (alteration in original) (first quoting *Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 829 (D.C. Cir. 2006); and then quoting *Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 11 (D.C. Cir. 2002))); *Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1139 (Fed. Cir. 2021) ("[A]n implicit ratification theory holds no water where, as here, the regulation at issue clearly contradicts the requirements of the statutory provision.").

(5)   Thus, FAR 15.206(e) must be read to "effectuate[] a different statutory requirement of equal import: that an agency maximize competition pursuant to the Competition in Contracting Act of 1984 (CICA), Pub. L. No. 98-369, 98 Stat. 1175 (codified as amended in scattered sections of titles 10, 31, and 41 of the United States Code)." *Seventh Dimension*, 160 Fed. Cl. at 18–19 (citing *Golden Mfg. Co., Inc. v. United States*, 107 Fed. Cl. 264, 275 (2012)).   In other words, only a proposed solicitation amendment constituting a cardinal change — thus requiring a new competition pursuant to CICA — triggers FAR 15.206(e)'s cancellation considerations. *See Golden Mfg. Co.*, 107 Fed. Cl. at 275 ("It is [CICA's] statutory imperative for full and open competition that is violated if a procuring agency makes a cardinal change to a contract requirement after accepting bids in response to a solicitation.").   If something less than a proposed cardinal change were sufficient to support an agency's cancellation of a solicitation, CICA would not be implicated and, thus, 10 U.S.C. §§ 3301(b) and 3303(c) would be improperly circumvented.   *Seventh Dimension*, 160 Fed. Cl. at 19.[5]

(6)   To cancel a solicitation pursuant to FAR 15.206(e), the contracting officer must make a "judgment" that a proposed solicitation amendment would both constitute a cardinal change, and that cancellation (and resolicitation) would result in increased competition for the procurement.   *Id.* at 20.   But that "judgment" must be "based on market research or otherwise," FAR 15.206(e) — which this Court has interpreted to include "evidence similar to market research" such as "information or data already in an agency's possession or perhaps even an agency's concrete experience."   *Id.*[6]

---

[5] FAR 15.206 cannot be interpreted to permit the government to avoid the statutory requirements of 10 U.S.C. §§ 3301(b) and 3303(c).   *See Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 990 (Fed. Cir. 2019) (rejecting agency's attempt "to avoid [statutory] requirements . . . by simply drafting a solicitation provision and labeling to an evaluation criterion" because that "would nullify the statutory procedures Congress put in place").

[6] This Court rejected the government's assertion that the contracting officer's mere "'*assumption* that additional firms may well be interested in participating in a competition' is acceptable, if it is reasonable."   Def. Resp. at 16 (emphasis added) (quoting *VSE Corp.*, B-290452.2, 2005 CPD ¶ 111, 2005 WL 1396999, at *5 (Comp. Gen. Apr. 11, 2005)); *see also Seventh Dimension*, 160 Fed. Cl. at 21; *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1377 (Fed. Cir. 2016) ("[A]n agency's 'experience and expertise' presumably enable the agency to provide the required explanation, but they do not substitute for the explanation, any more than an expert witness's credentials substitute for the substantive requirements applicable to [an] expert's testimony." (citation omitted)); *Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006) ("This court routinely defers to administrative agencies on matters relating to their areas of technical expertise.   We do not, however, simply accept whatever conclusion an agency proffers merely because the conclusion reflects the agency's judgment.").

(7)     The government conceded that the administrative record contained no market research to justify the cancellation of the procurement at issue.  *Id.* at 21.

(8)     The administrative record contained no other evidence sufficient to support the cancellation of the solicitation pursuant to FAR 15.206(e).  *Id.* at 25 (concluding that "the administrative record is devoid of any *facts*, beyond the [proposed] changes themselves, supporting the [contracting officer]'s judgment 'that additional sources likely would have submitted offers,'" a required consideration per FAR 15.206(e)).[7]

(9)     The contracting officer made only "conclusory assertions regarding the need for cancelling the Solicitation" and "did not apply or address the [cardinal change] considerations in any detail."  *Id.* at 32.[8]  Moreover, the "government before this Court point[ed] to no facts in the administrative record justifying the Army's cancellation of the Solicitation pursuant to FAR 15.206(e)."  *Id.*[9]

(10)    Accordingly, this Court concluded that the Army's solicitation cancellation decision was arbitrary, capricious, and contrary to law.  *Id.* at 33 (finding the Army's cancellation of the procurement "improper and unjustified").

The government's motion for reconsideration does not directly challenge any of the above premises.  Instead, the government attacks, from two different angles, only the Court's ultimate conclusion, arguing that this Court: (1) effectively applied a heightened

---

[7] "The [Administrative Procedure Act ("APA")]'s standard of review requires more than mere assumptions, hypotheses, and guesses — it requires reasonable conclusions based on facts or other record evidence."  *Seventh Dimension*, 160 Fed. Cl. at 24 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (holding that under the arbitrary and capricious standard of review, an agency "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the *facts* found and the choice made'" (emphasis added) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

[8] *Maggie's Landscaping, Inc.*, ASBCA No. 52462, 04-2 BCA ¶ 32,647 (finding no cardinal change where government work orders, "though less than the contract estimate[,] did not constitute a change to the work so drastic or profound that it effectively required [the contractor] to perform at highly increased costs [or] duties materially different from those on which the parties originally based their bargain").

[9] The Court also addressed in the injunctive relief section of its decision whether the cancelled (but now reinstated) Solicitation could adequately meet the government's needs.  *See Seventh Dimension*, 160 Fed. Cl. at 34–36.  The government now argues that the Court's consideration of that issue was improper, but all the Court did in that section was balance the harms as required, asking whether the government could meet its stated needs if the Court were to grant Seventh Dimension's requested injunction.

standard of review, contrary to precedent of our appellate court, the United States Court of Appeals for the Federal Circuit, Def. Mot. for Recons. at 14–18; and (2) improperly "conflat[ed] whether a solicitation can encompass, or be modified to address, the changes an agency would like to make with whether the changes themselves are substantially different than the original requirements," *id*. at 19.  Below, this Court first addresses the standard of review, followed by the issue of the Army's needs in relation to the adequacy of the Solicitation, and, finally, the Federal Circuit precedent the government relies upon.

### 2.   The Court Correctly Applied the APA's Standard of Review

In moving for reconsideration, the government primarily chafes at this Court's requiring "factual support" for the Army's solicitation cancellation, including record evidence "that the current [S]olicitation is insufficient to meet [the Army's] needs, that the current [S]olicitation cannot be modified post-award to accommodate those needs, [and] that the proposed amendments are necessary to meet the [Army]'s needs."  Def. Mot. for Recons. at 14.

This Court sees no reason to retreat from its prior decision on the merits.

This Court's insistence upon "factual support" for the Army's decision to cancel the Solicitation is entirely consistent with the APA's standard of review.  In that regard, the government responds to none of the authorities this Court relied upon in the initial decision.  *See, e.g.*, *Seventh Dimension*, 160 Fed. Cl. at 15–16 (discussing, among other cases, *In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000)); *id.* at 24 (citing cases for the proposition that "[t]he APA's standard of review requires more than mere assumptions, hypotheses, and guesses — it requires reasonable conclusions based on facts or other record evidence").  The Court simply does not understand how the government expected its challenged agency action to survive APA review without supporting *facts*, particularly given the Federal Circuit's instruction that the Court must conduct, pursuant to RCFC 52.1, a trial on the administrative record for the purpose of making factual findings.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1354, 1356 (Fed. Cir. 2005) (RCFC 52.1 "is properly understood as intending to provide for an expedited trial on the record" and requires the Court of Federal Claims "to make factual findings from the record evidence as if it were conducting a trial on the record").

Accordingly, where a plaintiff explains that an administrative record lacks factual support for a challenged agency decision, the APA requires that the agency do more than invoke generic, talismanic deference principles or repeat *ipse dixit*.  *See In re Durance*, 891 F.3d 991, 1000 (Fed. Cir. 2018) ("An abuse of discretion occurs if the decision is clearly unreasonable, arbitrary, . . . rests on clearly erroneous fact findings; or involves a record that contains no evidence on which the [agency] could base its decision." (citing *Abrutyn v. Giovanniello*, 15 F.3d 1048, 1050–51 (Fed. Cir. 1994))); *Honeywell Int'l Inc. v. Arkema Inc.*, 939 F.3d 1345, 1348 (Fed. Cir. 2019) (explaining that the APA requires a court

to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and that an agency "abuses its discretion if [its] decision . . . involves a record that contains no evidence on which the [agency] could rationally base its decision" (first alteration in original) (quoting 5 U.S.C. § 706(2)(A))); *In re Vivint, Inc.*, 14 F.4th 1342, 1351 (Fed. Cir. 2021) (applying *Honeywell*, 939 F.3d at 1348, and *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43); *Sierra Club v. Salazar*, 177 F. Supp. 3d 512, 533 (D.D.C. 2016) ("[A]n agency's reasoning is deficient if it is: (1) based on speculation; (2) mere conjecture and abstract theorizing offered in a vacuum; [or] (3) conclusory[.]" (cleaned up)). This Court will not "simply accept whatever conclusion an agency proffers merely because the conclusion reflects the agency's judgment." *Tripoli Rocketry Ass'n*, 437 F.3d at 77.

Moreover, even during oral argument on the government's motion for reconsideration, the government failed to point to record evidence to substantiate the Army's conclusion:

> [GOVERNMENT'S COUNSEL]: . . . I believe that Your Honor should test the [second cancellation decision] against what is in the record, but what is being tested is not the agency's rationale for making the changes. It's [whether] these changes legally support a cancellation based on what we know about the FAR and cardinal changes and all that . . . .

> THE COURT: Well, I think in the last oral argument we had an argument about whether or not the mere . . . hypothesis of increased competition was sufficient, *because you agree there is no market research or any real evidence that there's likely to be more competition under the revised approach that the agency now favors* . . . .

> [GOVERNMENT'S COUNSEL]: In this case, *no, they didn't have more market research.* . . .

> THE COURT: And there's no other evidence.

> [GOVERNMENT'S COUNSEL]: *There's no other evidence* . . . .

Recons. Tr. 51:15–52:11 (emphasis added).[10]

That concession regarding the lack of evidence in the administrative record to support the Army's second cancellation decision is sufficient to justify the Court's ruling

---

[10] *See Seventh Dimension*, 160 Fed. Cl. at 21 (noting the government's concession at oral argument that "[t]he contracting officer did not have any market research" (quoting Tr. 23:18–24)).

in favor of Seventh Dimension under the APA's standard of review.[11]   *See Great Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350, 364 (2004) ("[A]n agency's unsupported speculation that [cancellation and] resolicitation will increase competition or reduce prices does not provide a rational basis to cancel a solicitation."); *Macaulay-Brown, Inc. v. United States*, 125 Fed. Cl. 591, 604 (2016) (holding that "there is no support in the record for the contracting officer's [challenged] finding" and explaining that "[t]he finding does not identify any supporting evidence in the record").

### 3.   The Court Properly Considered Whether the Proposed Solicitation Amendments Were Necessary to Meet the Government's Actual Needs

This Court reaffirms that it properly considered whether the Army's proposed solicitation amendments are necessary to meet the Army's actual needs.  The question is a binary one: either the agency reasonably determined that a proposed amendment is necessary to meet some actual government need — thus, properly triggering FAR 15.206 considerations — or the agency did not.  If the agency made no such determination (or it is unreasonable), then, by definition, the proposed amendments are based on nothing more than a whim, serving as a mere pretext for cancellation.  In that regard, the Federal Circuit recognizes that "[t]he law of procurement does not tolerate 'actions reflecting personal predilections of administrative officials, whether ascribable to whim, misplaced zeal, or impermissible influence.'"  *Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1153 (Fed. Cir. 1994) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1305–06 (D.C. Cir. 1971)).  In *Parcel 49C*, the Federal Circuit affirmed the "trial court's findings that the Government's justifications for cancellation of the procurement were pretextual" because "*[w]ithout a valid reason* for cancelling the procurement, . . . the Government violated its duty to conduct a fair procurement."  *Id.* at 1151 (emphasis added).  That is the very same standard this Court applied here but to which the government now objects.[12]

The government's problem, however, is that its current position is a 180-degree reversal from what it committed to do *before this Court* in order to obtain the dismissal of Seventh Dimension's first action, challenging the Army's first solicitation cancellation decision.  In the first iteration of Seventh Dimension's suit, filed July 26, 2021, *see* Complaint, *Seventh Dimension, LLC v. United States*, No. 21-1614C (Fed. Cl. July 26, 2021), ECF No. 1, Seventh Dimension alleged, *inter alia*, that: (1) the Army's "cancellation action constitutes pretext to end a Solicitation that has seen multiple errors by the [Army] brought to light by Seventh Dimension through the protest process," *id.* ¶ 13; (2) "[n]o new contract will offer the [Army] more flexibility regarding scope and budget than the

---

[11] The Court discusses *infra*, Section III.A.3, the government's contention that "what is being tested is not the agency's rationale for making the [proposed] changes."  Recons. Tr. 51:16–18.

[12] Indeed, during oral argument on the motion for reconsideration, the government agreed that "if the agency hasn't justified why it needs to cancel, then the cancellation should be vacated."  Recons. Tr. 25:7–9.

[current IDIQ] Solicitation already does," *id.*; and (3) "[t]he Contracting Officer's cancellation notice does not identify any specific change in needs," *id.* ¶ 14.   Indeed, Seventh Dimension specifically alleged that "[d]espite what the Agency represented" to the GAO as part of corrective action to resolve the same protest grounds in that forum, the Army "apparently never meaningfully reflected on whether its needs had changed." *Id.* ¶ 58; *see also id.* ¶ 108 (alleging that the Army's "notice of cancellation offers only unsubstantiated conclusions" and that "[t]he Contracting Officer does not identify any material or changed needs").

Several weeks later, on September 2, 2021, the government filed a notice of corrective action to address Seventh Dimension's complaint.  *See* Notice of Corrective Action, *Seventh Dimension*, No. 21-1614C (Fed. Cl. Sept. 2, 2021), ECF No. 19 ("Def. Notice of Corr. Action").  The government committed to the following:

> Specifically, [the Army] will review Seventh Dimension's concerns including: (1) *whether USASOC's objective can be accomplished by making an award on existing proposals or amending, rather than cancelling, the solicitation*; (2) whether the IDIQ nature of the contract sufficiently addresses its budgetary concerns; and (3) whether the removal of the requirement to provide training facilities justifies cancellation.

*Id.* at 1 (emphasis added).  Thereafter, the parties filed a joint motion to dismiss the case.  *See* Joint Motion for Dismissal Based on Corrective Action, *Seventh Dimension*, No. 21-1614C (Fed. Cl. Sept. 10, 2021), ECF No. 21.   The joint motion represented the government's "commitment to take such action as the [corrective action] notice describes." *Id.* at 1.  The Army's commitment to perform such analyses made a great deal of sense because:  (1) it was the only way to moot Seventh Dimension's complaint; and (2) as the Court reasoned above, if the Army could meet its "objective" under the Solicitation — with or without amendment — then cancellation is improper.[13]

In light of the government's commitment to this Court, we cannot fathom why the government now opposes this Court's review of whether the Army implemented its corrective action, including a review of the Army's conclusion that it cannot meet its "objective . . . by making an award on existing proposals," Def. Notice of Corr. Action at 1, or under the Solicitation, generally.   The government knows it was obligated to

---

[13] *See* AR 3320 (Notice of Reinstatement) ("The Government will do the following for corrective action:  1. Determine whether USASOC's objective can be accomplished by making an award on existing proposals or amending, rather than cancelling the [S]olicitation[;] 2. Determine whether the IDIQ nature of the contract sufficiently addresses its budgetary concerns[; and] 3. Determine whether the removal of the requirement to provide training facilities justifies cancellation.").

perform such an analysis because — aside from its corrective action notice — the contracting officer's second cancellation decision (the "Addendum")[14] itself claims to "document[] the actions taken as a result of the voluntary corrective action and the outcome of the supplementary reviews," to include the "[d]etermin[ation] [of] whether [the Army's] objective can be accomplished by making an award on existing proposals or amended, rather than cancelling the [S]olicitation." AR 3321.

As it turns out, the Army performed no such analysis. Aside from one or two conclusory statements of precisely zero evidentiary value, the Addendum is devoid of any facts or analysis suggesting that the Army duly considered whether it could meet its "objective . . . by making an award on existing proposals," Def. Notice of Corr. Action at 1, or with the existing Solicitation, let alone that the Army substantively supported such a conclusion. The government agrees that is the case, but now contends that it is not a problem:

> THE COURT: Where is that assessed here [in the Addendum] . . . whether the current proposals could accomplish the same ends? Where is that analysis in here?
>
> [GOVERNMENT'S COUNSEL]: I would say, Your Honor, that their objective was to make the changes and to carry out the [S]olicitation that way.
>
> THE COURT: I hear you. Is there a sentence in [the Addendum] you'd want to talk about where . . . the Government makes the assessment as to whether or not the current proposals could accomplish the goals that they're interested in accomplishing?
>
> [GOVERNMENT'S COUNSEL]: No, Your Honor, and that was not legally required.

Recons. Tr. 28:25–29:12.

The government's position is completely unacceptable. The government convinced Seventh Dimension — *and*, *more importantly*, *this Court* — to agree to dismiss the prior complaint based on the Army's commitment to perform a particular analysis. The government cannot now claim that this analysis was optional.

Now, to be clear, the Court's view is that FAR 15.206(e) itself requires that analysis as a prerequisite to cancellation, particularly given the facts of this case. Presumably, the government agreed, as per its own corrective action notice and the parties' subsequent

---

[14] *See Seventh Dimension*, 160 Fed. Cl. at 12–13 (discussing the Addendum (AR 3321–24)).

joint motion to dismiss.  But, even if the government did not (and does not now) believe that FAR 15.206(e) required any such thing, the government cannot represent to this Court that the Army is going to do something, obtain a dismissal on that basis, and then ignore its commitments.  That is the very height of gamesmanship, and the Court will not countenance it.[15]  "Quite simply, counsel and the parties are bound by representations made to the Court, particularly when the record shows—as this record does—that extensive, thoughtful negotiation preceded those representations."  *Concordia Partners, LLC v. Ward*, 2014 WL 3378663, at *8 (D. Me. July 9, 2014); *see also Faiella v. Fed. Nat'l Mortg. Ass'n*, 928 F.3d 141, 146 (1st Cir. 2019) ("A party ordinarily is bound by his representations to a court and — having staked out his position in response to the district court's inquiry — the appellant cannot now repudiate that position." (citation omitted)); *Adidas Sportschuhfabriken ADI Dassler KG v. Chen*, 1988 WL 1091940, at *7 (N.D. Cal. Feb. 2, 1988) (concluding that a court "is entitled to rely upon and enforce the representations of counsel" because "the Court system would soon fail to function were the Court not able to rely upon representations and stipulations of counsel acting on behalf of their clients").[16]

    To reiterate, the Army asserted that it had to cancel the Solicitation pursuant to FAR 15.206(e) because:  (1) the Army's "objectives cannot be accomplished by making an award on existing proposals or amending the [S]olicitation," AR 3321; and (2) "[t]he IDIQ nature of the *[S]olicitation* does not sufficiently address [the Army's] current budgetary concerns," AR 3323.[17]  But the administrative record contains no facts or even a coherent explanation to support either of those conclusions.  To the contrary, on the latter point, the administrative record shows that the Army continued to consider other IDIQ vehicles as viable alternatives.  *See* AR 3324.  The contracting officer's own decision is, at a

---

[15] *Hous. Auth. of City of Slidell v. United States*, 149 Fed. Cl. 692, 700–01 (2020) ("[C]ourts . . . [have] the inherent authority (or pursuant to the Court's Rules) to devise and impose sanctions to preclude parties from engaging in gamesmanship.").

[16] The policies underlying judicial estoppel support this conclusion.  *See United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993) ("The policies underlying the [judicial estoppel] doctrine include preventing internal inconsistency, precluding litigants from 'playing fast and loose' with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." (quoting Rand G. Boyers, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw. U. L. Rev. 1244, 1245 (1986))); *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 214 (1st Cir. 1987) ("An apt analogy to . . . judicial estoppel is to the policy which prohibits litigants from manipulating their pleadings in order to obtain unjust results."); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1177 (D.S.C. 1974) ("That an estoppel can arise because of a prior inconsistent claim or position taken in a judicial proceeding is clear.  A party cannot have its cake and eat it too.").

[17] The contracting officer also posited that removing the requirement to provide land and training facilities justified the cancellation.  AR 3324.  The government's motion for reconsideration does not challenge the Court's findings on that issue.  *See Seventh Dimension*, 160 Fed. Cl. at 29.

minimum, self-contradictory regarding the "IDIQ nature" of the Solicitation the Army sought to cancel.[18]

The Court could have (and perhaps should have) stopped there — *i.e.*, with its conclusion that the contracting officer's decision to cancel the Solicitation failed to comply with FAR 15.206(e) and was otherwise arbitrary, capricious, and unsupported by the administrative record. The Court went further, however, to opine that it doubted "that the [contracting officer] could reasonably determine that the proposed amendment in this case constitutes a cardinal change." *Seventh Dimension*, 160 Fed. Cl. at 31. In particular, the Court explained that "if the cancelled IDIQ Solicitation is indeed sufficiently flexible to accommodate the Army's actual needs, then that would mean that the proposed amendment, by definition, is both anticipated, within the general scope of the contemplated work, and, thus, unnecessary." *Id.* The government does not like that formulation, *see* Def. Mot. for Recons. at 9; Recons. Tr. 14:11–23:1 — and the Court agrees, in retrospect, that it could have been clearer. But the Court simply blended two correct (and related) rules in the same sentence: (1) there is no cardinal change where the solicitation (or resulting contract) anticipates the possibility of the change in question because it does not impact the "overall purpose and nature of the original contract," *see Seventh Dimension*, 160 Fed. Cl. at 32 (quoting *Everpure, Inc.*, B-226395, 90-2 CPD ¶ 275, 1990 WL 278656, at *3 (Comp. Gen. Oct. 10, 1990), and collecting cases);[19] and (2) an amendment to a solicitation that is unnecessary to meet the government's needs, particularly "at the eleventh hour" of a procurement, is tantamount to a pretext for cancellation, *id.* Those two concepts are related because if the resulting contract can be modified as desired (*i.e.*, post-award) without triggering a cardinal change, that means the agency was not required to cancel the solicitation and start over to begin with.[20] If an

---

[18] *See* Ralph C. Nash, *Indefinite-Delivery/Indefinite Quantity Contracts: A Popular Vehicle*, 31 Nash & Cibinic Rep. ¶ 37 (2017) (discussing GAO report in which Department of Defense contracting officials noted that "IDIQ contracts also provide more funding flexibility as funds are obligated as needed through orders and not at contract award" and thus "allows work to be performed on an as needed basis . . . in an uncertain funding environment" (quoting U.S. Gov't Accountability Off., GAO-17-329, *Federal Contracts: Agencies Widely Used Indefinite Contracts to Provide Flexibility to Meet Mission Needs* (2017))); *Specialty Marine, Inc.*, B-293871, 2004 CPD ¶ 130, 2004 WL 1368234, at *4 (Comp. Gen. June 17, 2004) ("By their very nature, ID/IQ contracts provide agencies with . . . flexibility[.]").

[19] The government does not challenge this Court's view that FAR 15.206(e) applies only where a proposed solicitation amendment would constitute a cardinal change. Recons. Tr. 44:21–23 (government acknowledging that it is "not moving for reconsideration on the CICA aspect and the cardinal change aspect" of this Court's decision on the merits).

[20] As this Court explained in its earlier decision, the cardinal change test is used for different purposes. It is used to determine whether a post-award contract modification constitutes either (1) a breach of contract, thereby excusing the contractor from performance, or (2) the award of an improper sole-source contract that should have been subject to competition. The former arises in the context of a contractor's claim (typically pursuant to the Contract Disputes Act), while the

agency nevertheless cancels the solicitation, the proposed amendment, by definition, serves as nothing more than a pretext for cancellation and would constitute an invalid attempt to avoid the cancellation requirements contained in 10 U.S.C. § 3301(b).

This Court's approach is hardly novel. In *Macaulay-Brown, Inc. v. United States*, this Court rejected the government's grounds for a "planned cancellation of awards and re-solicitation." 125 Fed. Cl. at 605. In that case, the government pointed to the "agency's desire to make changes to the three initial task orders" in concluding that the requirement as first solicited no longer accurately reflected the current government needs. *Id.* Senior Judge Firestone, however, sided with the plaintiff, noting that "the government acknowledges that it would be able to make the planned changes to each of the task orders through in-scope modifications and that these changes do not require the agency to cancel the IDIQ and task order awards and resolicit offers." *Id.* at 606. The Court concludes that the same reasoning applies in this case.[21] Indeed, the Solicitation contains

---

latter arises in a bid protest-type action in the GAO or in this Court pursuant to 28 U.S.C. § 1491(b) brought by a would-be offeror contending that it should have the opportunity to compete for the work (improperly) added to an existing contract. *See generally* Ralph C. Nash, *"Cardinal Change": A Useful Term?*, 34 Nash & Cibinic Rep. ¶ 62 (2020) (discussing cardinal change concepts in the context of contract disputes and protests); *Travel Centre v. Baram*, 236 F.3d 1316, 1318 (Fed. Cir. 2001) ("Both requirements contracts and IDIQ contracts provide the government purchasing flexibility for requirements that it cannot accurately anticipate.").

[21] The government's reliance upon *Inverness Technologies, Inc. v. United States*, 141 Fed. Cl. 243 (2019), is misplaced. Def. Mot. for Recons. at 13–14. In *Inverness*, the Court held that an "agency is permitted to cancel a solicitation even absent absolute necessity or cardinal changes." 141 Fed. Cl. at 250. In that case, while the plaintiff invoked "a litany of regulations that it argue[d] circumscribe an agency's ability to cancel a solicitation" — and thus "essentially read[] a variety of additional factors into the [cancellation] standard" — *Inverness* declined to address them. *Id.* at 250 & n.2 (referencing FAR 15.206(e), among others, and explaining that "[b]ecause plaintiff did not ask the court to consider whether a violation of any of these regulations could itself form the basis for overturning the contracting officer's decision, the matter has not been fully briefed and presented to the court, and is not an appropriate subject for a legal conclusion in this opinion"). In this case, in contrast, the requirements of FAR 15.206 (and 10 U.S.C. §§ 3301(b) and 3303(c)) are squarely at issue. The Court further notes that older, more permissive cases appear to predate those provisions. *Compare Coastal Corp. v. United States*, 6 Cl. Ct. 337, 343–44 (1984) ("[T]he absence of regulations strongly suggests that there are no constraints on the cancellation of a negotiated procurement, other than the normal ones applicable to all agency action: that it be free from arbitrariness, capriciousness and abuse of discretion."), *with Def. Tech., Inc. v. United States*, 99 Fed. Cl. 103, 114–15 (2011) (discussing FAR 15.305(b), and other cases). *See also RN Expertise, Inc. v. United States*, 97 Fed. Cl. 460, 468 (2011) (noting that the government argued "that the applicable regulations governing the cancellation of solicitations are FAR 15.305(b) (providing that source selection authorities may reject all proposals if in the best interest of the Government) and FAR 15.206(e) (providing when cancellation of a solicitation is required)"); Competition in Contracting Act of 1984, Pub. L. No. 98-369, § 2723, 98 Stat 494, 1191–92 (current version codified at 10 U.S.C. §§ 3206, 3301–3309).

language that put potential offerors on substantial notice of the flexibility the Army intended to secure for itself. *See, e.g.*, AR 140 (Solicitation's ordering procedure for firm fixed price task orders noting that "[f]or course support [contract line items ("CLINs")], the Government will provide the contractor a statement of objectives a minimum of 30-days prior to each training exercise that will result in a fixed price task order for that support"); AR 173–74 (changing CLIN 0005 to broadly cover work "to be negotiated at the task order level . . . within scope of the overall . . . Training Support effort"); AR 178 (solicitation requirement noting that "[m]anager[s] must be flexible and adapt to changing requirements as the Program of Instruction is adapted to the contemporary operational environment").

Moreover, contrary to the government's assertions, both the GAO and this Court frequently review, in other protest contexts, whether a solicitation's requirements are necessary to meet an agency's legitimate needs. *See, e.g.*, *NCS Techs., Inc.*, B-403435, 2010 CPD ¶ 281, 2010 WL 4886734, at *2 (Comp. Gen. Nov. 8, 2010) ("Although a contracting agency has the discretion to determine its needs and the best method to accommodate them, the agency may include restrictive requirements only to the extent they are necessary to satisfy its legitimate needs."); *Mossberg Corp.*, B-274059, 96-2 CPD ¶ 189, 1996 WL 664740, at *5 (Comp. Gen Nov. 18, 1996) ("[T]he record does not adequately establish that the challenged requirement is necessary to satisfy the agency's minimum needs."); *PhilCon Corp.*, B-206728, 83-1 CPD ¶ 380, 1983 WL 26692, at *3 (Comp. Gen. Apr. 12, 1983) ("We will object to restrictive solicitation requirements where they are not reasonably related to the agency's legitimate needs."); *Geo–Med, LLC v. United States*, 135 Fed. Cl. 742, 749 (2017) ("Given the detail and reasoning included in the Market Research Report, the Court must defer to the [contracting officer]'s expertise and sustain the procurement bundling as necessary and justified."); *Remote Diagnostic Techs. LLC v. United States*, 133 Fed. Cl. 198, 203 (2017) (finding that the administrative record provided "an abundance of evidence to support the government's position that the printer requirement was necessary"). The point is not that those cases drive the outcome here, but rather only that there is nothing particularly unusual about this Court's considering whether a specific solicitation requirement — or, in this case, a proposed solicitation amendment — is at all necessary to meet an agency's needs.

Finally, even if this Court erred elsewhere in its analysis, such error is harmless given that the contracting officer applied a cancellation standard that is clearly contrary to FAR 15.206(e). Again, that provision requires a contracting officer to have a reasonable factual basis for determining that "additional sources *likely would have submitted offers* had the substance of the amendment been known to them." FAR 15.206(e) (emphasis added). Here, however, the contracting officer asked not whether increased competition was "likely" but rather whether "a revised solicitation would present *the potential* for

increased competition." AR 3324 (emphasis added).[22] Every resolicitation "present[s] the potential for increased competition," *id.*, and thus the standard the contracting officer employed would, at a minimum, improperly swallow 10 U.S.C. §§ 3301(b) and 3303(c)).[23]

### 4. Binding Precedent Does Not Dictate a Different Outcome

The Federal Circuit decisions upon which the government relies — *Veterans Contracting Group, Inc. v. United States*, 920 F.3d 801 (Fed. Cir. 2019), *Croman Corp. v. United States*, 724 F.3d 1357 (Fed. Cir. 2013), and *Dell Federal Systems, L.P. v. United States*, 906 F.3d 982 (Fed. Cir. 2018)[24] — do not undermine the Court's holding in this case.

This Court previously addressed *Veterans Contracting Group v. United States*, 920 F.3d 801 (Fed. Cir. 2019), in its prior decision:

> Notably, in *Land Shark Shredding, LLC v. United States*, the Federal Circuit summarized its holding in *Veterans Contracting* as follows: "the [agency] can cancel [service-disabled veteran-owned small business] set-aside solicitations where there are no reasonable bids." 842 F. App'x 589, 592 (Fed. Cir. 2021) (citing *Veterans Contracting*, 920 F.3d at 806–07). The [contracting officer] in this case, however, did

---

[22] *See* Recons. Tr. at 54:8–9 (government concurring that "the word [']potential['] is not the same as [']likely[']").

[23] The "potential for increased competition" standard the contracting officer invoked appears to have been derived from older GAO decisions. *See, e.g.*, *Glob. Sols. Network, Inc.*, B-289342.4, 2002 CPD ¶ 64, 2002 WL 461784, at *2 (Comp. Gen. Mar. 26, 2002) ("A reasonable basis for cancellation exists when, for example, a solicitation is ambiguous or overstates the agency's minimum needs, such that the cancellation of the solicitation and the issuance of a revised solicitation would present *the potential* for increased competition." (emphasis added)). More recent GAO decisions, however, correctly adhere to the FAR's formulation. *See, e.g.*, *Progress for Bakersfield Veterans, LLC*, B-418703.7, 2021 CPD ¶ 303, 2021 WL 4207490, at *4 (Comp. Gen. Aug. 11, 2021) ("Under FAR section 15.206(e), if an amendment proposed for issuance after offers have been received is so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional sources *likely would have submitted offers* had the substance of the amendment been known to them, the contracting officer is required to cancel the original solicitation and issue a new one, regardless of the stage of the acquisition." (emphasis added)). In *Bakersfield Veterans*, the GAO found that neither FAR 15.206(a) nor FAR 15.206(e) "require[d] the agency to amend or cancel the solicitation because the agency did not change its requirements or the terms and conditions of the solicitation in any material way." *Id.*

[24] *See* Def. Mot. for Recons. at 14–17.

>      *not* conclude that Seventh Dimension's proposal was
>      unreasonable or otherwise unawardable.

*Seventh Dimension*, 160 Fed. Cl. at 16 n.16.  *Veterans Contracting* is thus inapposite and the government's motion for reconsideration does not event attempt to explain that decision in light of *Land Shark Shredding*.

In any event, the Federal Circuit in *Veterans Contracting* reaffirmed the appellate court's previous holding in *Parcel 49C*, that "the government cannot cancel a solicitation solely to satisfy an agency's whim."  *Veterans Contracting Grp.*, 920 F.3d at 806 (citing *Parcel 49C*, 31 F.3d at 1153–54).  But that is exactly what the Army did where, as here, it cannot explain why the proposed solicitation amendments are needed.  *Id.*  In *Veterans Contracting*, the Federal Circuit determined that "the record disclose[d] a reasonable motivation for cancellation."  *Id.*  In this case, in contrast, the Army has not substantiated such a reasonable basis for cancellation.

Moreover, while "a bidder-claimant generally must show that [a] procurement decision lacked a 'proper legal basis,'" the Federal Circuit recognized that such an assessment requires the application of the substantive legal provision governing the procurement decision at issue.  *Veterans Contracting Grp.*, 920 F.3d at 806 (quoting *Parcel 49C*, 31 F.3d at 1154).  In *Veterans Contracting*, that substantive provision was FAR 14.404-1, and the Federal Circuit concluded that the contracting officer "had a compelling reason to request cancellation."  *Id.* at 807 (applying FAR 14.404-1).  In this case, the substantive provision at issue is FAR 15.206(e), the meaning and application of which *Veterans Contracting* did not address.  Nor, for that matter, did *Veterans Contracting* address the significance of 10 U.S.C. §§ 3301(b) and 3303(c).[25]

---

[25] Leading commentators have explained that, for the purposes of a procurement cancellation, the distinction between a sealed bid and negotiated procurement, if anything, may militate against cancellation:

>      There are other cogent reasons to refrain from canceling that are
>      applicable equally to negotiated procurements.  The wasted effort
>      resulting from cancellation and the additional time and effort
>      required if there is a resolicitation would seem to require that
>      decisions to cancel should only be made as a last resort.  Further, in
>      a negotiated procurement, problems can often be remedied in the
>      discussion and best and final offer stages thereby making
>      cancellation an extraordinary remedy.

Ralph C. Nash & John Cibinic, *Cancellation of Solicitations: Are Bids and Proposals Sweeter the Second Time Around?*, 7 Nash & Cibinic Rep. ¶ 36 (1993).

The next case the government invokes, *Croman Corp. v. United States*, 724 F.3d 1357 (Fed. Cir. 2013), does not address FAR 15.206(e) or 10 U.S.C. §§ 3301 and 3303(c).  That makes sense because *Croman* did not involve a solicitation cancellation at all; the government in that case did *not* attempt to reject "all . . . competitive proposals received in response to a solicitation."  10 U.S.C. § 3301(b).  Rather, *Croman* involved the mere removal of specific CLINs.  724 F.3d at 1359–60 (explaining that "[d]ue to budget concerns and based on previous analysis, the [agency] re-evaluated the need for the equipment and services solicited and determined the optimum number of helicopters to be thirty (30)" and, thus, "only thirty (30) of the thirty-four (34) CLINs of the 2011 Solicitation [were] awarded").  The Federal Circuit in *Croman* affirmed the trial court's decision that the agency reasonably "determined that it was necessary to eliminate four (4) out of thirty-four (34) CLINs from the 2011 Solicitation due to budget constraints and a potential need to evaluate a different aircraft the following fiscal year."  *Id.* at 1364.  The disappointed bidder had only "speculat[ed] that there actually were no budgetary concerns," but the plaintiff-appellant's speculation was plainly insufficient to meet its burden.  *Id.*

*Croman* thus supports this Court's decision here in two ways.  First, in *Croman*, the government itself urged the Federal Circuit to recognize that the "[plaintiff-appellant]'s argument" about the lack of actual budgetary concerns "is . . . a factual one."  Corrected Brief for Defendant-Appellee at 47–48, *Croman Corp. v. United States*, 724 F.3d 1357 (Fed. Cir. 2013) (No. 12-5138), 2013 WL 298321.  Here, too, the question of whether there is evidence in the record to support the Army's cancellation decision pursuant to FAR 15.206(e) is a factual one — a question this Court has decided in favor of Seventh Dimension.  *See Seventh Dimension*, 160 Fed. Cl. at 32.  Second, the Federal Circuit considered whether the agency's CLIN removal "decision[] [was] responsive to its actual needs."  *Croman Corp.*, 724 F.3d at 1365.  This Court acknowledges, as it must, that the Army has a substantial "level of discretion . . . to make [procurement] decisions responsive to its actual needs," *id.*; and, of course, this Court recognizes that legitimate budgetary considerations may drive such procurement decisions.  But, in this case, as a factual matter, the administrative record does not support that the solicitation cancellation relates to the Army's "actual needs" — meaning, in the language of the government's own corrective action notice, that the Army did not examine or support the conclusion that its objectives could not somehow be accomplished by making an award on existing proposals or amending, rather than cancelling, the Solicitation.  *See* Def. Notice of Corr. Action at 1.

Finally, relying upon *Dell Federal Systems, L.P. v. United States*, 906 F.3d 982 (Fed. Cir. 2018), the government contends that the Court improperly "substitute[d] the judgment of the Court for that of the [Army] by allowing the Court to determine what should have been the more preferrable solution."  Def. Mot. for Recons. at 17.  This Court, however, did no such thing and *Dell Federal Systems* is inapposite.  As explained *supra*, in asking whether the Army could meet its needs with the current proposals or solicitation,

the Court simply posed the very same question the Army committed to analyze as part of its correction action — no more, no less. *Dell Federal Systems* is inapposite as the Federal Circuit in that case held only that "the Army rationally chose discussions, rather than clarifications, . . . as the appropriate corrective action to address . . . material errors" in a procurement, and that the "Army was not legally required to address every option, but rather to provide a reasonable corrective action and adequately explain its reasoning for doing so." 906 F.3d at 998. Even where "corrective action [is] rationally related to the procurement defect," however, *id.* at 999, the government must implement the corrective action as represented to this Court.

Moreover, *Dell Federal Systems* addressed neither solicitation cancellation requirements nor corrective action calculated to remedy an alleged failure to properly cancel a solicitation, as Seventh Dimension alleged in its first suit. That is a critical point because when asking whether "corrective action [is] rationally related to the procurement defect," *Dell Fed. Sys.*, 906 F.3d at 999, the underlying specific statutory or regulatory requirements must be considered, *id.* at 995–96 (discussing DFARS 215.306(c)(1) and holding that "the corrective action of conducting discussions is rationally related to the undisputed procurement defect of originally failing to conduct pre-award discussions, as reasonably interpreted by the agency to be required by the applicable regulations, in the first instance").

In contrast to *Dell Federal Systems*, the government here seeks to avoid implementing the very corrective action to which it committed. In that regard, the government previously recognized that, as a prerequisite to cancellation, the Army first had to determine that its objective could not "be accomplished by making an award on existing proposals or amending, rather than cancelling, the [S]olicitation." Def. Notice of Corr. Action at 1. That is what Seventh Dimension asserted the Army was required to analyze in the first instance and that is what the government committed to do. And, again, the Court agrees with Seventh Dimension that is what FAR 15.206(e) requires in any event. This Court's decision is not an outlier. *See Pro. Serv. Indus., Inc. v. United States*, 129 Fed. Cl. 190, 203–04 (2016) (holding that agency improperly resolicited new proposals where "there is nothing in the record to demonstrate that the agency ever made a determination that the original solicitation did not accurately reflect its needs"); *cf. PGLS, LLC v. United States*, 152 Fed. Cl. 59, 69 (2020) ("The record supports finding that [the agency's] corrective action, which resulted in the cancellation of [an] award and reprocurement of the Solicitation, is arbitrary and capricious."), *appeal dismissed*, 2021 WL 3077595 (Fed. Cir. Feb. 18, 2021).[26]

---

[26] *See also Pro. Serv. Indus.*, 129 Fed. Cl. at 206 (criticizing corrective action that "gives the appearance of securing a result that is precisely the opposite of what the procurement rules ordinarily require" because "rather than ensuring that an offeror's proposal conform strictly to the requirements of the solicitation, the agency has changed the solicitation to conform to an offeror's proposal"); *Sheridan Corp. v. United States*, 95 Fed. Cl. 141, 154 (2010) ("Any issues

**B. The Government Waived Its Arguments Regarding the Scope of Injunctive Relief**

The crux of the government's other main argument on reconsideration is that the Court committed a "clear legal error" in issuing injunctive relief because it rested on the "factually incorrect" conclusion that Seventh Dimension is the only remaining acceptable offeror;[27] according to the government, the Army never eliminated the other remaining offeror, Reservoir International, Inc. ("Reservoir"), from the competition.  Def. Mot. for Recons. at 3–4.  The government further asserts that:  (1) the Court's reliance on FAR 19.1405(c) was erroneous because Reservoir was never eliminated from the competitive range, *id.* at 4–5; (2) the Court exceeded its authority and ignored the APA's standard of review in determining that only Seventh Dimension's proposal is awardable (and, by implication, that Reservoir's proposal is not), *id.* at 5–6; and (3) the Court improperly ordered the Army to award the contract to Seventh Dimension, in contravention of "established precedent," *id.* at 6–9.  Finally, the government contends that the "legally correct remedy" upon a finding that the Army's proposed changes "do not warrant cancellation" is to "allow USASOC to . . . amend[] the [S]olicitation, receiv[e] updated proposals and pricing from any offeror remaining in the competitive range, and mak[e] an award based on value."  Def. Mot. for Recons. at 11–12.

The problem with this entire line of argument is that the government failed to properly address this purportedly "clear error" in its merits briefs (supporting the parties' cross-motions for judgment on the administrative record) or at oral argument on those motions.  The government's failure, in that regard, is particularly notable given Seventh Dimension's extensive arguments on the very issues about which the government now complains.

For example, Seventh Dimension asserted no less than ten times in its briefs that it was the only offeror remaining in the competitive range and made that point at least twice during oral argument.  *See* Pl. MJAR at 4 ("The [Army] insists, without explanation, that other acceptable offerors exist, but the record contradicts the [Army]'s assertion.  At the time of cancellation, the [Army] had one acceptable offeror—Seventh Dimension."); *id.* at 34 ("At that point, Seventh Dimension was the only qualified offeror left in the . . . competitive range. . . . The [Army] should have awarded the contract to the winner—Seventh Dimension." (citing AR 1670)); *id.* at 35 (describing Seventh Dimension as the "only remaining acceptable offeror in the competitive range"); *id.* at 37 ("When the dust

---

resulting from the passage of time were of the Government's own creation and cannot support the agency's attempt to resolicit proposals.").

[27] For example, the government takes issue with the Court's description of Seventh Dimension as:  (1) "the last offeror standing," *Seventh Dimension*, 160 Fed. Cl. at 8; (2) "the only remaining, awardable offeror following the receipt and evaluation of proposals," *id.* at 21; (3) "the putative winner," *id.* at 28; and (4) the "only . . . viable, awardable offeror remaining," *id.* at 32.

settled . . . , only one competitor remained standing—Seventh Dimension."); *id.* at 38 (depicting Seventh Dimension as the "last competitor standing"); Pl. Resp. at 1 ("Internal [Army] documentation demonstrates the correctness of Seventh Dimension's protest, leaving Seventh Dimension as the . . . sole offeror standing." (citing AR 2974–75)); *id.* at 6 ("[T]he [Army]'s argument ignores the fact that, at the time of cancellation, the [Army] had one acceptable offeror—Seventh Dimension."); *id.* at 23 ("[H]ere, the [Army] has only one remaining acceptable . . . offer in its hand . . . ."); *id.* at 24 (labeling Seventh Dimension as "the last standing" offeror); *id.* at 25 ("[Seventh Dimension] was the only acceptable offeror."); Tr. 71:3–5 ("[PLAINTIFF'S COUNSEL]: In spring 2021, after two years of competition, Seventh Dimension [was] the last offeror standing, the putative awardee in this competition . . . ."); Tr. 123:3–4 ("[PLAINTIFF'S COUNSEL]: [A]t the time of this cancellation, [Seventh Dimension] was [the] last offeror standing . . . ."); *see also* Tr. 122:18–20 ("[PLAINTIFF'S COUNSEL]: We know from . . . our protest of [the award to] Reservoir, that Reservoir was not acceptable.").[28]

In contrast, the government *never once* mentioned Reservoir's competitive status in the procurement.  Indeed, the government referenced the number of *offers* — not offerors — only three times in its briefs and never in the body of the argument.  For instance, in the government's MJAR, the government noted this issue in but a single sentence in the statement of facts and in a *footnote* in the argument section.  *See* Def. MJAR at 9 ("In this instance, there was not only one acceptable offer and as such, [13 C.F.R. § 125.2(a)(2) and FAR 19.1405(c)] did not apply." (citing AR 3323)); *id.* at 34 n.16 ("As the contracting officer noted, there is not only one acceptable offer and these provisions are inapplicable on that basis." (citing AR 3323)).  The government reiterated in a single footnote in its response brief *the exact same assertion* with no additional support or discussion.  *See* Def. Resp. at 19 n.7 ("As the contracting officer noted, there is not only one acceptable offer and these provisions are inapplicable on that basis." (citing AR 3323)).  Again, the government did not mention Reservoir in any of its MJAR briefs; on the contrary, in each instance, the government merely cited to the same sentence on a single page in the record to support the assertion that more than "one acceptable *offer*" exists.  AR 3323 (emphasis added).  The distinction between acceptable *offers* and *offerors* is critical, as the Court will explain below.

When the Court raised the question of whether the government had waived this entire line of argument, the government failed to provide a satisfactory justification:

> THE COURT: . . . Plaintiff, in its merits briefing, spent pages arguing that they were the only [offeror] left [in the procurement].  And the only mention that we could find of

---

[28] Notably, the Court referred to Seventh Dimension as the "presumptive winner" during an exchange with government's counsel at oral argument on the merits, but the government did not correct or otherwise respond to the Court's characterization.  *See* Tr. 38:20.

the Government countering that argument were those two footnotes.  Is there any other line in the brief that you would want to point to other than those footnotes?

[GOVERNMENT'S COUNSEL]: I don't have that off the top of my head, Your Honor, but I would say I don't believe . . . that it was necessary to respond to that . . . [b]ecause it's not a relevant question to this protest. . . .

[THE COURT]: Well, you can believe it's not relevant, but . . . Plaintiff argued at great length that it mattered that they were the only one left, and that FAR 19.[1]405(c), although it's a "should," meant that they should get the award because they were the only one left.  And . . . looking back at it now, the only response to the idea that they are not the only one left is in two footnotes in your briefs.  Am I wrong?

[GOVERNMENT'S COUNSEL]: I don't believe so, Your Honor.

Recons. Tr. 56:20–57:22.

The bottom line is that the government never meaningfully advanced the argument about Reservoir's status in its MJAR or response brief.  Undeveloped or perfunctory arguments, such as those raised in a factual background section or in the footnotes of a party's brief, may be deemed forfeited or waived.  *See SmartGene, Inc. v. Advanced Biological Lab'ys, SA*, 555 F. App'x 950, 954 (Fed. Cir. 2014) ("[A]rguments that are not appropriately developed in a party's briefing may be deemed waived. . . . [T]he district court acted well within its discretion in concluding, as it explained on reconsideration, that . . . passing assertions did not amount to a developed argument . . . . We view the court's ruling as essentially one that [the party] forfeited [the] argument." (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006))); *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (noting that arguments raised only in "the background of [an] opening brief" are waived); *SmithKline Beecham Corp.*, 439 F.3d at 1320 ("[A]rguments raised in footnotes are not preserved.").[29]  As the United States

---

[29] *See also Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 1379 n.2 (Fed. Cir. 2020) (noting that arguments made "in passing" are not considered fully developed and are waived), *cert. denied*, 142 S. Ct. 82 (2021); *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1341 (Fed. Cir. 2006) (concluding that undeveloped arguments are "deemed waived"); *Olaplex, Inc. v. L'Oréal USA, Inc.*, 855 F. App'x 701, 712 (Fed. Cir. 2021) ("If the record contains more evidence than [the court] ha[s] identified, [and the parties] ha[ve] not brought such additional evidence to [the court's] attention, [the court] need not sift the extensive record for it on [its] own."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' [is] really nothing more than an assertion, [and] does not preserve a claim[,] [e]specially not when the brief presents a passel of other arguments . . . . Judges are not like pigs, hunting for truffles buried in briefs."

Court of Appeals for the First Circuit aptly explained, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). "Judges are not expected to be mindreaders[;] . . . a [party] has an obligation 'to spell out its arguments squarely and distinctly' or else forever hold its peace." *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (quoting *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988)).

In this case, as noted *supra*, Seventh Dimension repeatedly argued, and at great length, that its proposal remained as the only awardable proposal.  The government did not respond with anything more than a vague footnote, merely alluding to the existence of another offer (not *offeror*), and without even mentioning Reservoir by name.  Nor did the government explain *why* Seventh Dimension was not the only viable offeror remaining; that is, the government never asserted that Reservoir remained in the competition.  The government's argument for a broad rewrite of this Court's injunction based on Reservoir's remaining in the competition is thus waived.[30]

Putting aside the fact that the government buried its cryptic point in footnotes, the government, as a substantive matter, offered nothing more than the naked assertion that there is not "only one acceptable offer," Def. MJAR at 9, 34 n.16; Def. Resp. at 19 n.7, without any further information or explanation supporting that assertion.  *See Raghunathan v. Holder*, 604 F.3d 371, 378 (7th Cir. 2010) ("[S]tating blankly what one's argument *is* and actually *arguing* a position are different things.").  It is not the Court's responsibility to litigate a matter on behalf of the parties.  *See Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.) ("The premise of our adversarial system is that [federal] courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them."); *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("It is not th[e] court's

---

(citation omitted)); *DeJonghe v. City of Dearborn Heights*, 2021 WL 4894613, at *8 (E.D. Mich. Oct. 20, 2021) ("Because the Court cannot develop Plaintiff's arguments *sua sponte*, Plaintiff's challenge is waived.").

[30] This result is likely no surprise to the government as it apparently attempted to avoid waiver in its motion for reconsideration by masking the issue.  There — once again, in a footnote, ironically — the government asserts that it raised this argument in its briefs. Def. Mot. for Recons. at 5 n.3 ("We repeated this caveat in our motion for judgment on the administrative record and response.").  The government, however, incorrectly cites to full pages of its briefs (*i.e.*, above-the-line) and omits that these vague assertions were made only in footnotes.  *Id.* (asserting that the government previously made this argument in "ECF No. 20 at 34" and "ECF No. 22 at 19").  The government does not acknowledge in its motion for reconsideration that it mentioned this issue only in the footnotes and background section of its MJAR briefs.

responsibility to research and construct the parties' arguments."); *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments . . . ."). The Court, therefore, had no obligation to decipher such a vague and unsupported assertion and transform it into a coherent argument in response to Seventh Dimension's extensively briefed position. *See Carducci*, 714 F.2d at 177 ("We . . . decline to entertain [the party]'s asserted but unanalyzed . . . claim.").

Moreover, this Court considered the contracting officer's conclusory assertion in the Addendum that "FAR 19.1405(c) is not applicable in this case, as there is an incorrect assumption that only one acceptable *offer* exists," AR 3323 (emphasis added), but this statement does not support the proposition for which the government now cites it. In particular, the Addendum indicates only that more than "one acceptable *offer* exists," not that there was more than one acceptable *offeror* remaining in the competitive range. *See* AR 3323 (emphasis added). Ordinarily, of course, the existence of more than one acceptable *offer* would necessarily mean that there is more than one *offeror* in the competitive range. The problem for the Army is that, in the absence of any further explanation in the government's briefs or the Addendum, the Court agreed with, and continues to agree with, Seventh Dimension that only one acceptable *offer* in fact remains — the one belonging to Seventh Dimension. In contrast, Reservoir's *offer* is manifestly unacceptable and noncompliant with the Solicitation, which, in fact, is why the Army ultimately rejected it and, indeed, terminated Reservoir's contract award based on that offer. *See* Pl. Resp. to Mot. at 7–10; Recons. Tr. 58:14–15.

In other words, the Court rejects the Addendum's unsupported conclusion that there is another acceptable *offer* pending for the Army's consideration. Had the contracting officer in the Addendum explained how Reservoir's proposal could be salvaged or that the Army retained Reservoir in the competitive range for further consideration, perhaps this Court would have understood the government's point. But the Army's Addendum contained only a single, manifestly incorrect statement about current, pending *offers*.

In sum, the government's MJAR opposed Seventh Dimension's request for injunctive relief only in the most general terms but did not provide any specifics and is devoid of any indication that the Army sought the opportunity to amend the Solicitation in the event the Court enjoined the cancellation and returned the matter to the Army. Even more egregious, the government's response brief entirely failed to address injunctive relief or potential remedies.[31] Accordingly, the government's arguments for

---

[31] In that regard, the government admitted that it did not respond to Seventh Dimension's argument because the government did "not anticipat[e] that the Court would" make factual findings concerning which offerors remained in the competition, even though Seventh Dimension asked this Court to do just that. Recons. Tr. 64:11–18 (government arguing, for the first time, that such findings are "beyond the Court's authority").

reconsideration of the relief the Court ordered are waived.  Nevertheless, this Court exercises its discretion to modify its previous injunction, for the reasons explained below.

### C.  The Court Modifies Its Prior Injunction

Although the government waived its arguments regarding the scope of injunctive relief, the Court nevertheless exercises its discretion to modify the previously ordered injunction for the simple reason that the government is correct that it apparently never formally eliminated Reservoir from the competitive range.  *See* AR 2975; AR 3321 (noting that that when the Army reinstated the Solicitation, the Army "sent separate notices to both offerors within the competitive range").[32]  Indeed, FAR 15.306(c)(3) and FAR 15.503 require agencies to provide notice to offerors that are eliminated from consideration.  *See* Def. Mot. for Recons. at 4 n.2.  There is no evidence, however, that Reservoir was sent any such notification.  To be clear, as noted above, none of these points were included in the government's merits briefs, nor did the government argue in the first instance that the Court should afford the Army the opportunity to amend the Solicitation.  The Court, nevertheless, will reconsider, in part, its prior opinion and order.  *See Potter v. District of Columbia*, 558 F.3d 542, 553 (D.C. Cir. 2009) (Williams, J., concurring) ("While a judge isn't a pig hunting for truffles in the parties' papers, neither is he a potted plant.").

Although the Court's original (and currently-stayed) injunction effectively required the Army to choose between a new solicitation cancellation decision and awarding the contract to Seventh Dimension, the Court instead returns the procurement to the Army to meet its original corrective action obligations.  *Cf. D.C. Hosp. Ass'n v. District of Columbia*, 73 F. Supp. 2d 8, 13 (D.D.C. 1999) (holding that where a "prior lawsuit was dismissed pursuant to an order of this court that the case was moot[,] . . . this court could rely on its inherent power to vindicate its authority and effectuate its prior order," particularly where it was "based . . . on the defendants' representations that the plaintiffs' concerns had been met"), *aff'd*, 224 F.3d 776 (D.C. Cir. 2000).  Accordingly, as specified below, the Army must determine "whether USASOC's objective can be accomplished by making an award on existing proposals or amending, rather than cancelling, the [S]olicitation."  Def. Notice of Corr. Action at 1.  The Court at this stage expresses no opinion on whether the latter approach — *i.e.,* amending the Solicitation — is permissible if awarding a contract based upon a pending proposal can meet the Army's needs.  Nor, for that matter, does the Court express a view as to whether FAR 15.206 requires the issuance of a solicitation amendment whenever a post-award contract modification is

---

[32] Specifically, the Army sent Reservoir letters concerning (1) the first cancellation of the Solicitation, AR 3027, (2) the reinstatement of the Solicitation, AR 3319, and (3) the second cancellation of the Solicitation, AR 3367–70, which suggests that the Army considered Reservoir a contending offeror and still in the competitive range.  *See* Def. Mot. for Recons. at 4 (citing AR 3027–28, 3319–20, 3367–70, 3374–77).

contemplated by an agency before the results of a procurement process are concluded.[33] Those are questions reserved for the next stage of this case, if any, assuming Seventh Dimension or another interested party has an objection to the Army's procurement decision(s) following this modified injunction and remand.[34]

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the government's motion for reconsideration.  The Court's previous injunction and remand is hereby modified and replaced as follows:

(1)   The Army shall determine whether its objectives can be accomplished by making an award on existing proposals or amending, rather than cancelling, the Solicitation.

(2)   The government shall file a status report no later than **August 10, 2022**, informing the Court whether the Army has decided:  (a) to award a contract based on a currently pending proposal; or (b) to amend the Solicitation and, if so, how the Army intends to amend it and what subsequent steps the Army intends to take; or (c) to cancel the Solicitation.  Along with the status report, the government shall file a statement from the contracting officer explaining the Army's selected course of action with particularity, how the Army intends to implement it, as well as any supporting rationale.

(3)   The Army's second cancellation decision, as reflected in the Addendum, remains **VACATED**, and the government remains **ENJOINED** from proceeding with any and all reprocurement efforts for the work sought under the Solicitation until further notice.

---

[33] *Compare Pro. Serv. Indus.*, 129 Fed. Cl. at 206 (criticizing agency's corrective action that "gives the appearance of securing a result that is precisely the opposite of what the procurement rules ordinarily require" because "rather than ensuring that an offeror's proposal conform strictly to the requirements of the solicitation, the agency has changed the solicitation to conform to an offeror's proposal"), *with Booz Allen Hamilton Eng'g Servs., LLC*, B-411065, 2015 CPD ¶ 138, 2015 WL 2329290, at *6 (Comp. Gen. May 1, 2015) (finding that while an agency did not "act[] unreasonably in not amending the solicitation prior to award," that does not mean an agency may award a task order "with the intention of modifying it after award").

[34] This result moots the other grounds for the government's reconsideration motion, including: (1) that the Court's previous injunction ignored the requirements of FAR 15.206(a) and (c); (2) that the Court improperly interfered with discretionary procurement decisions; and (3) that the Court erroneously relied on FAR 19.1405(c) in crafting its original injunction.  Def. Mot. for Recons. at 4–5, 10–14.  The government, however, is not necessarily entitled to "infinite remands."  *IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57, 85 (2022).

If the government indicates in its status report that the Army intends to take any action other than awarding a contract to Seventh Dimension, then (1) Seventh Dimension shall be entitled to its bid and proposal costs in an amount to be determined in further proceedings,[35] and (2) Seventh Dimension shall file a response to the government's status report on or before **August 17, 2022**, indicating whether Seventh Dimension intends to challenge any of the Army's procurement decisions stemming from this remand (*i.e.*, to amend or cancel the Solicitation, or any other associated decision(s)).

Accordingly, pursuant to RCFC 52.2, the Court retains jurisdiction of this matter pending the Army's compliance with this injunction and remand.  The Court will delay the entry of final judgment given the possibility of further proceedings.[36]

Notwithstanding RCFC 52.2(b)(2), the Clerk of the Court need not serve this opinion and order; rather, counsel for the United States is directed to provide a copy of this opinion and order to the cognizant contracting officer, which shall constitute service pursuant to that Rule.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
**Matthew H. Solomson**
**Judge**

---

[35] *See Q Integrated Cos., LLC v. United States*, 126 Fed. Cl. 124, 148 (2016) ("In light of this grant of limited injunctive relief, [the plaintiff] is entitled to recover its reasonable costs incurred in bid preparation and proposal."); *CNA Corp. v. United States,* 83 Fed. Cl. 1, 10–11 (2008), *aff'd,* 332 Fed. App'x 638 (Fed. Cir. 2009).

[36] *See ARxIUM, Inc. v. United States*, 136 Fed. Cl. 188, 210 (2018).